UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| SEAN MICHAEL RYAN, # 787263, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-736 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| ROGER GERLACH, M.D., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983. Plaintiff is an inmate at the Baraga Correctional Facility (AMF). His complaint concerns alleged deficiencies in the medical treatment he received at the Ionia Maximum Correctional Facility (ICF) from April 25, 2014, through September 9, 2014. The defendant is Robert Gerlach, M.D.[1] Plaintiff alleges that Dr. Gerlach was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause when he allowed plaintiff's ground floor accommodation to expire and did not renew the temporary medical details under which plaintiff had been permitted to have meals in his cell, possess a cane, and use a wheelchair for distances of more than 150 feet. Plaintiff alleges that the same actions by Dr. Gerlach violated his First Amendment rights because they constituted retaliation for a lawsuit filed by plaintiff: Case No. 1:14-cv-511 (W.D. Mich.).

---

[1]All plaintiff's claims against other defendants have been dismissed. (docket # 8).

The matter is now before the Court on defendant's motion for summary judgment. (docket # 20). Plaintiff has filed his response. (docket #s 25, 26, 35). For the reasons set forth herein, I recommend that plaintiff's claim for injunctive relief be dismissed as moot. I recommend that defendant's motion for summary judgment be granted and that judgment be entered in defendant's favor on all plaintiff's claims seeking damages.[2]

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving

---

[2]Plaintiff's Eighth Amendment claim in this case substantially overlaps his Eighth Amendment claim against Dr. Gerlach in Case No. 1:14-cv-511. Case No. 1:14-cv-511 is assigned to District Judge Paul L. Maloney. In a report and recommendation, I recommended that Judge Maloney grant Dr. Gerlach's motion for summary judgment in Case No. 1:14-cv-511 and enter judgment defendant's his favor.

party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

## **Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate in the custody of the Michigan Department of Corrections. He is currently an inmate at the Baraga Correctional Facility (AMF).

Dr. Gerlach is a licensed physician. (Gerlach Decl. ¶ 2, docket # 20-2, Page ID 134). He has been the medical director and site physician at ICF since April 2013. Dr. Gerlach was the medical director and site physician at the Richard A. Handlon Correctional Facility from April 2009 until his move to ICF. (*Id.* at ¶ 3, Page ID 134).

On June 26, 2013, Dr. Gerlach conducted a lengthy review of plaintiff's medical records in preparation for conducting a physical examination. Plaintiff had a history of back surgeries before he began his incarceration in Michigan's prison system on December 29, 2010. (Gerlach Decl. ¶¶ 8, 9, Page ID 135; docket # 35, Page ID 365, 369-70, 374, 385-88). Dr. Gerlach found that plaintiff's medical records documented his history of malingering, drug seeking behavior and attempts to manipulate prison medical care providers. Plaintiff used "hunger strikes" to try to obtain desired accommodations such as a walker, wheelchair, cane, meals in, shower chair and no steps. (Gerlach Decl. ¶¶ 9-34, Page ID 135-41; docket # 22-1, Page ID 179-249). When Dr. Gerlach conducted a physical examination, he had doubts about the amount of effort that plaintiff was putting into various tests. For example, plaintiff did not try to resist during the biceps/triceps test. Plaintiff declined to respond when Dr. Gerlach inquired whether he was using his back issues to obtain special details. Dr. Gerlach offered a diagnosis of chronic neck/back/leg pain status post cervical and lumbar laminectomies, left leg weakness/buckling with questionable etiology but consistent for over 2 years, probable narcotic overuse/abuse/addiction prior to incarceration, personal safety issue due to crime, and a history of repeated hunger strikes and segregation placements in attempts to receive special accommodations. (Gerlach Decl. ¶¶ 34-35, Page ID 140-41; docket # 22-1, Page ID 244-46). Dr. Gerlach authorized a cane, use of a wheelchair for distances over 150 feet, and allowed plaintiff to receive meals in his room on a temporary basis. (Gerlach Decl. ¶ 36, Page ID 141; docket # 22-1, Page ID 244-46).

On July 15, 2013, plaintiff notified medical personnel that he was going on a hunger strike. (Gerlach Decl. ¶ 37, Page ID 141; docket # 22-1, Page ID 248). On July 18, 2013, plaintiff threatened to harm himself and was referred to mental health. There was evidence that plaintiff was

eating. On July 25, 2015, custody staff indicated that plaintiff was refusing to eat in an attempt to obtain transfer to another prison. (Gerlach Decl. ¶¶ 38-39, Page ID 142; docket # 22-1, Page ID 252-58). On July 29, 2013, Dr. Gerlach found that plaintiff was not in any observable distress. Plaintiff indicated that he was on a hunger strike in an attempt to obtain a transfer. On August 7, 2013, plaintiff asked to be placed in medical segregation. Plaintiff was informed that he was not eligible for medical segregation. On August 19, 2013, it was observed that plaintiff was eating regularly and had no signs or symptoms of distress. Plaintiff related that if he were sent back into general prison population, he would cut his heel and he believed that the Achilles injury would get him three months in the hospital. (Gerlach Decl. ¶ 40, Page ID 142).

On October 14, 2013, during the weekly case management meeting it was noted that plaintiff was able to stand at his cell door each day for legal rounds and when meals were delivered. He had also been standing on his bed and placing and removing paper to manipulate the amount of incoming light. Two days later, after a series of no shows for medical appointments, custody staff went to plaintiff's cell with a wheelchair to take plaintiff to his appointment. Plaintiff's response was to claim that he could not stand up. Plaintiff's ability to stand and walk was well-documented. In Dr. Gerlach's opinion, this incident fit into plaintiff's chronic pattern of deception, manipulation, drug seeking behavior, and lack of effort to work with health care to allow them to get a true and accurate picture of his musculoskeletal and proclaimed neurological issues. Dr. Gerlach noted that plaintiff was receiving appropriate medical care and appropriate accommodations. (Gerlach Decl. ¶ 43, Page ID 143).

On November 3, 2013, plaintiff threatened a hunger strike because he wanted a change in his pain medication and wanted the 150 foot limitation for wheelchair use eliminated. Plaintiff was

aware that his non-steroidal anti-inflammatory medications (NSAIDS) would be discontinued because they cannot be taken without food. Plaintiff indicated that he would not eat until he received the Neurontin. (Gerlach Decl. ¶ 44, Page ID 143; docket # 22-1, Page ID 269-72). On November 21, 2013, Dr. Gerlach found that the subjective symptoms that plaintiff reported simply did not match up with the objective medical evidence. He noted the numerous reports of plaintiff doing much more than he indicated he was capable of doing. Dr. Gerlach explained to plaintiff that he did not find that plaintiff was a good candidate for non-formulary pain medications. Plaintiff provided an exaggerated response to a simple fingertip touch on his back. Dr. Gerlach again noted the questionable etiology of the pain plaintiff reported. He further noted plaintiff's history of opiate abuse. It was Dr. Gerlach's medical opinion that plaintiff was malingering, seeking secondary gain, and drug seeking. He found no medical reason to honor any request by plaintiff to change his special accommodations. (Gerlach Decl. ¶ 46, Page ID 144; docket # 22-1, Page ID 275-76).

In March 2014, plaintiff indicated that he was on a hunger strike. (Gerlach Decl. ¶¶ 50-52, Page ID 145; docket # 22-1, Page ID 281-86). On April 25, 2014, Dr. Gerlach declined to renew temporary ambulatory aids. (Gerlach Decl. ¶¶ 55-57, Page ID 146). In July and September 2014, Dr. Gerlach renewed plaintiff's prescriptions for Naproxen and Excedrin Migraine. (Gerlach Decl. ¶ 63, Page ID 148; docket # 22-1, Page ID 297-99).

In late August 2014, Dr. Gerlach was served with a copy of plaintiff's complaint. He did not realize that plaintiff had sued him until late August 2014. Plaintiff filed an inordinate number of health care requests[3] and the inclusion of Case No. 1:14-cv-511 on the forms failed to alert Dr.

---

[3]Plaintiff represents to the Court that he filed such forms on at least a daily basis and that he filed a total of "over 130" forms between his filing of his complaint in Case No. 1:14-cv-511 on May 8, 2014, and filing this lawsuit on July 9, 2014. (Compl. at 3, docket # 1, Page ID 5).

Gerlach that plaintiff was bringing a lawsuit against him. Plaintiff's lawsuit had no impact on his medical treatment. He would have received the same medical care from Dr. Gerlach absent litigation. (Gerlach Decl. ¶¶ 55-58, 71-73, 146-47, 149-50; docket # 1-1, Page ID 14).

On September 10, 2014, plaintiff was transferred from ICF to the Baraga Correctional Facility. Dr. Gerlach was not plaintiff's treating physician at any time after this transfer. (Gerlach Decl. ¶ 67, Page ID 148).

### Discussion

**1.     Mootness**

Plaintiff is an inmate at AMF. Defendant provides medical care to inmates at ICF. Plaintiff's claim for injunctive relief against defendant is moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

**2.     Eighth Amendment Claim**

Plaintiff alleges that Dr. Gerlach violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause in the medications he prescribed and the ambulatory aids and other accommodations he authorized. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 4 (6th Cir.1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under Wilson, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298.  No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against defendant.  The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety."  511 U.S. at 837.

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care.  Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.  The prison official's state of mind must evince deliberateness tantamount to intent to punish.  Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.  Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law.  *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to

prevent the constitutionalization of medical malpractice claims.'") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550)).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against defendant. The record shows that defendant treated plaintiff's condition on an ongoing basis and displayed no deliberate indifference. The unrefuted medical record shows that plaintiff received virtually constant medical attention, at a level exceeding that available to most free citizens. The claims that defendant "should have" provided him with "different" medical care is, at best, a state-law malpractice claim. Plaintiff's disagreement with defendant's diagnosis and treatment falls far short of supporting an Eighth Amendment claim. *See e.g., Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006). The doctor responsible for plaintiff's care articulated substantial reasons for refusing to provide him the medications of his choice and the accommodations he wanted. The doctor's decisions were grounded in medical judgment, not in indifference or malice.

**3.    Retaliation Claim**

On summary judgment, a plaintiff asserting a First Amendment retaliation[4] claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected

---

[4]"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *see Ryan v. Watkins*, No. 1:14-cv-510, 2015 WL 4158753, at * 6 (W.D. Mich July 9, 2015).

conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g., Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

"The first element [plaintiff] must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). I will assume for present purposes that plaintiff's lawsuit was not frivolous.

Plaintiff's claim falters on the remaining elements. The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. "[R]outine inconveniences of prison life [ ] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). "Plaintiff has no right to the prescription medication of his choice. Declining to prescribe plaintiff's favored accommodations is not an action that would deter a person of ordinary firmness." *Kaplan v. Michigan Dep't of Corr.*, No. 1:11-cv-255, 2013 WL 1289524, at * 17 (W.D. Mich. Mar. 8, 2013).

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted). Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant. Specifically,

plaintiff must point to specific, nonconclusory evidence reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003).

The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken." *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir.2002)).  "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim."). Plaintiff has not presented sufficient evidence to support a causal connection between his protected conduct and defendant's actions.

Even assuming plaintiff could demonstrate that his protected conduct was a motivating factor in the defendant's action, Dr. Gerlach would nonetheless be entitled to judgment in his favor as a matter of law.  On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007).  Defendant has shown that he "would have taken the same action even without the protected activity" and he is entitled to entry of judgment in his favor on plaintiff's retaliation claim. *See Eby*, 481 F.3d at 441-42; *see also Rogers v. Bradley*, No. 1:12-cv-1201, 2015 WL 505738, at * 10 (W.D. Mich. Feb. 6, 2015).  I find that Dr. Gerlach is entitled to judgment in his favor as a matter of law on plaintiff's First Amendment retaliation claim.

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claim for injunctive relief be dismissed as moot. I recommend that defendant's motion for summary judgment (docket # 20) be granted and that judgment be entered in his favor on all plaintiff's claims against defendant seeking damages.


Dated:   August 17, 2015          /s/  Phillip J. Green          
                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).